Dorothy C. WOODS,
Petitioner-Appellant,

v.

IOWA DEPARTMENT OF JOB SERVICE, Respondent-Appellee,

and

Waterworks Board of Trustees,
Intervenor-Appellee.

No. 2–67423.

Court of Appeals of Iowa.

Sept. 21, 1982.

Linda S. Pettit, Des Moines, for petitioner-appellant.

Blair H. Dewey, Des Moines, for respondent-appellee.

John R. Mackaman and Jon P. Sullivan of Dickinson, Throckmorton, Parker, Mannheimer & Raife, and Walter F. Maley and Joseph L. Bervid, Des Moines, for intervenor-appellee.

Considered by OXBERGER, C.J., and DONIELSON and JOHNSON, JJ.

OXBERGER, Chief Judge.

Appellant, Dorothy C. Woods, was employed as a mail clerk from April 1971 to December 4, 1979, by the Waterworks Board of Trustees. Her duties included picking up mail in various departments, including the treasurer's department, and seeing that it was mailed.

In 1973, appellant had filed a complaint of racial discrimination against Waterworks with various federal, state, and local agencies. Following a finding of probable cause in favor of her complaint by the Des Moines Human Rights Commission and the Iowa Civil Rights Commission, a conciliation agreement was entered into between the appellant and Waterworks. Appellant testified that she had been subjected to racial harassment over the entire course of her employment, and that she had complained to Guy Gillum, her supervisor, about this alleged harassment, particularly with regard to certain employees of the treasurer's department.

On Friday, November 30, 1979, appellant did not pick up mail from the treasurer's department. The following Monday, December 3, she was warned that failure to pick up the mail was ground for dismissal. Nevertheless, she failed to pick up the mail from the treasurer's department on December 3. On the following day, she was discharged for having failed to carry out her duties.

Appellant testified that she had not willfully or deliberately refused to pick up the mail on Friday, November 30, but that when she arrived at the treasurer's office, there was no mail to be picked up in the basket from which she usually took it. However, she did not deny that she had simply refused to pick up the mail from that department on December 3.

Following her discharge, appellant filed a claim for unemployment benefits effective December 2, 1979. On December 20, 1979, a claims deputy found that she was not qualified to receive benefits because she had been discharged for insubordination. Her appeal of this determination led to a hearing before a Job Service hearing officer on January 11, 1980, at which she and her employer appeared. The earlier agency finding that she had been discharged for misconduct in connection with her employment was affirmed. On January 31, 1980, she appealed to the Appeal Board, which affirmed the decision of the hearing officer. Her application for rehearing was denied due to "lack of evidence other than that which has already been presented." In response to a petition for judicial review, a hearing was held before the district court, which affirmed the earlier decision.

I. Evidence of Misconduct.

■ Our review is limited to a determination of whether substantial rights of the petitioner have been prejudiced because the agency action was in violation of constitutional or statutory provisions, made upon unlawful procedure, or because the district court's findings were based upon error of law. Iowa Code § 17A.19(8) (1981). *See Hoffman v. Iowa Department of Transpor-*

*tation,* 257 N.W.2d 22, 25 (Iowa 1977). However, we are entitled to make anew the judicial determinations specified in § 17A.19(8). We must determine whether, on the record presented, the facts found by the agency constitute misconduct under 370 I.A.C. § 4.32(1)(a), which defines misconduct. *Holt v. Iowa Department of Job Service,* 318 N.W.2d 28, 29 (Iowa App.1982).

Misconduct is defined in the job services rules at 370–4.32(1)(a), Iowa Administrative Code, as

a material breach of the duties and obligations arising out of such worker's contract of employment. Misconduct as the term is used in the disqualification provision as being limited to conduct evincing such willful or wanton disregard of an employer's interest as is found in deliberate violation or disregard of standards of behavior which the employer has the right to expect of employees, or in carelessness or negligence of such degree of recurrence as to manifest equal culpability, wrongful intent or evil design, or to show an intentional and substantial disregard of the employer's interest or of the employee's duties and obligations to the employer. On the other hand, mere inefficiency, unsatisfactory conduct, failure in good performance as the result of inability or incapacity, or good faith errors in judgment or discretion are not to be deemed misconduct within the meaning of the statute.

Under rule 370–.32(4), Iowa Administrative Code, the burden in on the employer to prove employee misconduct.

Appellant concedes that she deliberately refused to pick up the mail in the treasurer's department on December 3, 1979. She contends, however, that she did not do so with evil design or malice, but that she was justified in her refusal to carry out her duties on that day because of the alleged racial harassment to which she was subjected. She also contends that there is no real evidence that she would have refused to pick up mail in the treasurer's office if she had been permitted to work beyond December 3, 1979. Finally, she contends that she

was given no opportunity to correct her behavior after being warned, even though she had attempted to explain her reasons for her refusal to her supervisor.

In *Cosper v. Iowa Dept. of Job Service,* 321 N.W.2d 6, 10 (Iowa 1982), the supreme court cited with approval a Vermont Supreme Court opinion which held that although absenteeism might be grounds for discharge because of its adverse effects upon the employer, "[a]bsences in good faith, for good cause, with appropriate notice, are not misconduct. They may be grounds for discharge, but not for penalty. Substantial disregard for the employer's interest is not shown, and this is essential for a finding of misconduct." *In re Therrien,* 132 Vermont 535, 537, 325 A.2d 357, 358 (1974).

If an employee's total failure to show up for work on a number of occasions is not necessarily misconduct, then it would follow *a fortiori* that an employee's absence from a particular job site on a particular occasion may not constitute misconduct if such absence is in good faith or for good cause. The question, then, is whether appellant's failure to pick up the mail at the treasurer's office constituted misconduct under this criterion.

Numerous courts have held that intentional harassment of an employee is an abnormal working condition and constitutes good cause for leaving work voluntarily. *See, e.g., Associated Util. Serv., Inc. v. Board of Review, Department of Labor and Industry,* 131 N.J.Super. 584, 331 A.2d 39, 40 (1974). *Richards v. Daniels,* 1 Ark.App. 331, 615 S.W.2d 399 (1981), concerned a teacher who had been snubbed and ostracized by her colleagues for three years after she had refused to sign a petition against the superintendent. The teacher was not notified of meetings, was not given messages, and was subjected to other forms of harassment. Her repeated requests to the superintendent went unheeded. The court upheld an award of unemployment benefits to her on the ground that she had quit her job for good cause, defining "good cause" as "a cause which would reasonably impel the

average able-bodied qualified worker to give up his or her employment," adding that a necessary condition was the good faith of the employee.

In *Gray Moving and Storage, Inc. v. Industrial Commission,* 38 Colo.App. 419, 560 P.2d 482 (1976) and *Gray Moving and Storage, Inc. v. Industrial Commission,* 38 Colo. App. 422, 560 P.2d 484 (1976), a black male employee and a white female employee who began to date one another quit their jobs after being subjected to "cold, curt treatment" by supervisors. The court held that personal relationships within the company are to be considered in evaluating working conditions, and upheld the Commission's finding that the deterioration in attitudes and the working atmosphere following their association with one another rendered the working conditions intolerable. The court therefore upheld an award of full unemployment compensation benefits to both employees.

Similarly, in *Wilson v. Doyal,* 319 So.2d 855 (La.App.1975), an employee resigned after being subjected to working conditions that were not imposed upon other employees of equal rank. The court found that this constituted "discriminatory and unfair treatment," that she had good cause to resign, and that she was therefore eligible for unemployment benefits. *See also Qunan v. Commonwealth Unemployment Comp. Board,* 48 Pa.Cmwlth. 432, 409 A.2d 972, 973 (1980) and *Meyer v. Employment Division,* 51 Or.App. 563, 626 P.2d 400 (1981), generally upholding the principle that harassment or abusive conduct may constitute a compelling cause for an employee's termination of his employment entitling the employee to unemployment benefits.

■ We hold that an employee's failure to perform a specific task may not constitute misconduct if such failure is in good faith or for good cause. Repeated racial harassment by co-employees, undeterred by the employer, may constitute good cause for failure to perform a task at the source of the harassment. Whether appellant was unreasonably harassed was a contested but unresolved issue in this case at the department level. The district court found "that conduct of co-employees toward another can be such as to justify the others [sic] refusal to perform certain tasks. The agency found that the condition did not exist in this case and the finding is supported in the record."

■ There is no finding by the hearing officer concerning the extent of racial harassment by co-employees. The hearing officer merely declared that "[t]he fact that there may or may not have been discriminatory remarks or comments made by various employees has nothing to do with the claimant's responsibility for picking up the mail." The appeal board made no additional findings of fact.

While we agree with the district court's legal conclusion that "conduct of co-employees toward another can be such as to justify the others' refusal to perform certain tasks," we disagree with his conclusion that the agency resolved the fact issue as to whether there was racial harassment by co-employees.

We reverse and remand for further proceedings in conformance with this opinion.

REVERSED AND REMANDED WITH DIRECTIONS.